IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 45989

| | | |
|---|---|---|
| STATE OF IDAHO | ) | |
| | ) | |
|     Plaintiff-Respondent, | ) | **Boise, September 2018 Term** |
| | ) | |
| v. | ) | **Filed: March 8, 2019** |
| | ) | |
| JEFFREY ALLEN JESKE, | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
|     Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The judgment of conviction is <u>affirmed</u>.

State Appellate Public Defender's office, Boise, for appellant. Brian R. Dickson argued.

Idaho Attorney General's office, Boise, for respondent. Theodore S. Tollefson argued.

_____

STEGNER, Justice.

Jeffrey Allen Jeske (Jeske) appeals from his conviction of felony driving under the influence (DUI). Jeske contends the district court erred when it made two evidentiary rulings: the first when it allowed the deputy prosecutor to comment on his refusal to consent to a blood draw to test it for alcohol; the second regarding testimony of uncharged misconduct. Jeske also alleges the district court erred when it allowed the State to amend the charges against him the morning of the trial and in refusing to give a requested jury instruction. Finally, Jeske asserts that the cumulative error doctrine requires his conviction to be vacated. For the reasons set forth in this opinion, we reject Jeske's arguments and affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shortly before midnight on January 12, 2016, a Coeur d'Alene police officer, Caleb Hutchison (Officer Hutchison), noticed a Dodge Dakota pickup traveling on Sherman Avenue with only one working headlight. Officer Hutchison effected a traffic stop. The pickup was being operated by Jeske. When Officer Hutchison got to the truck, Jeske's response was delayed.

1

When asked for his driver's license, Jeske told Officer Hutchison he did not have one. When asked why not, he rubbed his thumb and forefinger together.[1] Jeske fumbled with other paperwork, dropping the truck's registration at one point.

According to Officer Hutchison: Jeske's speech was marked by slurring and mumbling; Jeske's eyes were glassy and he had what the officer described as a "thousand yard" stare; and, he had a lethargic expression and was "excessively relaxed."

Because Officer Hutchison suspected Jeske of driving under the influence, he asked Jeske to step out of the truck and perform field sobriety tests. Jeske ultimately complied with the request to get out of the truck; however, he refused to comply with the field sobriety tests. During his interaction with Jeske, Officer Hutchison purportedly noticed the slight odor of alcohol[2] and that Jeske was unsteady on his feet. After continued refusal to perform the tests, Jeske turned away from the officer, placed his hands behind his back, and asked the officer to place him under arrest. At that time, the officer arrested Jeske and drove him to the Kootenai County Jail.

At the jail, Officer Hutchison asked Jeske to perform a breath alcohol test. Jeske refused. After refusing to take the breath test, Officer Hutchison asked Jeske if he would submit to a blood test. Jeske remained silent in response to the officer's request. Upon receiving no response, the officer obtained a search warrant from a magistrate judge. The warrant authorized a blood draw, which was effected by a nurse at Kootenai Medical Center.

On January 13, 2016, the State filed a criminal complaint, charging Jeske with felony driving under the influence in violation of Idaho Code section 18-8004.[3] The Criminal Complaint alleged that Jeske had been impaired while driving under the influence of alcohol. No mention was made of the impending results of the blood draw Jeske had undergone earlier that

---

[1] The apparent implication was that he, Jeske, could not afford a driver's license.

[2] In the probable cause affidavit submitted by Officer Hutchison, he wrote: "I detected the slight odor of an alcoholic beverage on Jeske's person." However, the recording device used by him contradicts his affidavit. In the recording, Officer Hutchison, in discussing the situation with another officer, stated: "He says he hasn't been drinking and I don't get any odor . . . ."

[3] The charge was a felony because Jeske had two prior felony DUI convictions within the preceding fifteen years. In fact, only one felony DUI in the previous fifteen years is sufficient to form the necessary predicate for a subsequent DUI to be a felony. I.C. § 18-8005(9). In addition, the State sought a sentencing enhancement based on Idaho Code section 19-2514 for the new charge, alleging this was Jeske's third felony conviction and, as such, it exposed him to additional imprisonment. If convicted of a third felony, Idaho Code section 19-2514 provides that an individual subject to such enhancement "shall be sentenced to a term in the custody of the state board of correction which term shall be for not less than five (5) years and said term may extend to life."

same day. On February 5, 2016, Jeske waived his preliminary hearing. On February 8, 2016, the State filed the original Information, charging Jeske with felony DUI under an impairment theory, making no mention of the blood draw performed on January 13. The blood draw results were received by the State on February 24, 2016. The test showed Jeske's blood alcohol content to be 0.182, more than twice the *per se* limit of .08. The State shared the results of the test with Jeske's counsel the same day.

On June 6, 2016, the morning of Jeske's jury trial, the State moved to amend the Criminal Information to include the *per se* theory, to allege Jeske had been operating a motor vehicle with a blood alcohol content above the statutorily proscribed level of 0.08.[4] The district court granted the motion to amend and the case proceeded to trial that same day.

The jury found Jeske guilty of driving under the influence. In a proceeding following the jury's verdict, the judge concluded Jeske had been found guilty of felony DUI twice within the preceding fifteen years, which rendered the DUI he committed on January 12, 2016, a felony. In addition, the district court found Jeske's sentence was also subject to statutory enhancement.

Jeske filed a timely appeal. The Court of Appeals affirmed the district court's judgment and Jeske's conviction. Jeske petitioned this Court for review which we granted.

## II. ISSUES PRESENTED ON APPEAL

A.  Whether the district court violated Jeske's Fourth Amendment rights when it allowed evidence and argument regarding Jeske's refusal to consent to a blood draw.

B.  Whether the district court abused its discretion by granting the State's motion to amend the Information on the morning of trial.

C.  Whether the district court erred by refusing to give Jeske's requested jury instruction regarding impairment.

D.  Whether the district court abused its discretion when it admitted evidence of other uncharged misconduct.

E.  Whether the cumulative error doctrine requires reversal of Jeske's conviction.

---

[4] The Amended Criminal Information alleged Jeske's blood alcohol content was 0.0182. If Jeske's blood alcohol content had been 0.0182, he would not have been in violation of the *per se* limit of .08. While it is not clear from the record how this error was corrected, Jury Instruction No. 2 correctly indicates that Jeske's blood alcohol content was 0.182 when it was tested.

## III. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016). "Constitutional issues are pure questions of law over which this Court exercises free review." *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006). The decision to permit an amendment to a charging document is a matter within the discretion of the trial court. *State v. Severson*, 147 Idaho 694, 708, 215 P.3d 414, 428 (2009).

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *State v. Anderson*, 162 Idaho 610, 614, 402 P.3d 1063, 1067 (2017). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citing *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018)).

## IV. ANALYSIS

### A. Any potential error in allowing evidence regarding Jeske's refusal to allow a warrantless blood draw was harmless.

During Jeske's interaction with Officer Hutchison, he was asked to undergo the following tests: field sobriety tests; a breath alcohol test; and, after having refused to undergo the first two, a blood alcohol test. During the last, he remained silent.

On the first day of trial, Jeske moved to have various portions of the officer's video recording redacted. Specifically, Jeske sought to have his refusal to engage in the tests sought by Officer Hutchison redacted. The trial judge rejected his efforts stating, "the refusals to engage in the field sobriety test [sic], the breathalyzer, *and to submit to a blood draw goes to consciousness of guilt.*" (Italics added.)

Jeske contends on appeal that his Fourth Amendment rights were violated when the trial judge allowed testimony to be presented regarding his refusal to submit to a blood draw. Jeske relies on *State v. Christiansen*, 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007) for the

4

proposition that a prosecutor may not constitutionally comment on a defendant's invocation of his Fourth Amendment rights.

The State concedes that commenting on a defendant's exercise of a constitutional right is improper; however, the State maintains Jeske did not make a proper objection specific to the blood draw and therefore whatever error was not preserved. As an alternative, the State argues that if preserved the error was harmless.

"This Court will not consider issues raised for the first time on appeal." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (citation omitted). However, if the issue was argued to, or decided by, the district court it can form the basis for review by this Court. *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). "Th[is] Court recognizes a distinction between issues not formally raised below and issues that 'never surfaced' below." *Kolar v. Cassia Cty. Idaho*, 142 Idaho 346, 354, 127 P.3d 962, 970 (2005).

Here, even though Jeske's counsel did not explicitly mention the blood draw at one point in time, the judge specifically identified the blood draw in her ruling. The district court stated, "the refusal . . . to submit to a *blood draw* goes to consciousness of guilt." (Italics added.) Consequently, the issue regarding Jeske's refusal to submit to the blood draw was ruled on, preserved, and will be addressed in this appeal.

The State acknowledges that the trial judge specifically ruled on the propriety of commenting on the blood draw; however, it next argues the judge's ruling was superfluous and unnecessary, citing *State v. Abdullah*, 158 Idaho 386, 482–83, 348 P.3d 1, 97–98 (2014). In *Abdullah*, this Court held that because the defendant withdrew his motion, the district court's ruling was not necessary and did not form the basis of appeal. *Id.* This case is not analogous to *Abdullah.* Here, defense counsel continued to argue against the admission of all three of Jeske's test refusals, including the blood test. Consequently, it cannot be said that the issue was intentionally withdrawn. Thus, the judge's ruling was neither superfluous nor unnecessary. The issue was preserved and will therefore be analyzed.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures." U.S. Const. amend. IV. A blood draw is a search and seizure under the Fourth Amendment. *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014) (citing *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)). The United States Supreme Court and this Court

5

have clarified that there is a constitutional right to refuse a warrantless blood draw. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2184–85 (2016); *Missouri v. McNeely*, 569 U.S. 141, 165 (2013); *Wulff*, 157 Idaho at 419, 337 P.3d at 578.

The issue here is whether there is a constitutional violation if the prosecution introduces evidence or comments on the refusal as evidence of consciousness of guilt. The State conceded that it was improper to comment on Jeske's refusal. Given the State's concession, we assume, without deciding, that there was a constitutional violation.

Nonetheless, any error in allowing evidence to be introduced or argument made relating to Jeske's refusal of the warrantless blood draw was harmless. When this Court finds an error that was objected to at trial, this Court reviews the error under the harmless error test. *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010). In *Perry*, this Court adopted the harmless error test outlined in *Chapman v. California*, 386 U.S. 18 (1967). "Under the *Chapman* harmless error analysis, where a constitutional violation occurs at trial, and is followed by a contemporaneous objection, a reversal is necessitated, *unless* the State proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Perry*, 150 Idaho at 221, 245 P.3d at 973 (italics in original) (quoting *Chapman*, 386 U.S. at 24).

Here, the State met its burden in proving the error did not contribute to the verdict obtained. There was uncontradicted scientific evidence properly presented at trial that demonstrated to the jury that Jeske had committed a DUI. The most compelling of which was evidence that Jeske's blood, following a legal blood draw, was 0.182, more than twice the *per se* legal limit of 0.08. Inclusion of the refusal to submit to a blood draw to show a consciousness of guilt is immaterial considering Jeske had a blood alcohol content of 0.182. Thus, any error was harmless.

## B. The district court did not err in allowing the State to amend the Criminal Information on the first day of trial.

On the morning of the trial, the State moved to amend the Criminal Information to include the *per se* theory of DUI, alleging that Jeske had been operating a motor vehicle with a blood alcohol content of .08 or above.[5] The district court granted the State's motion. The district

---

[5] The language added to the Criminal Information was: "and/or in the alternative, did drive the above described motor vehicle at the above described location, with an alcohol concentration of .08 percent or more, to-wit: .0182 [sic], as shown by an analysis of his blood . . . ."

6

court found that Jeske was not prejudiced because he had received the blood alcohol content test results in February, roughly four months before trial. Further, the district court found that the *per se* theory was not an additional charge, but rather an alternate way to prove the same offense.

Jeske argues adding the *per se* theory the morning of trial altered the nature of the crime charged, and thus, violated his constitutional rights in two ways. First, the amendment prejudiced Jeske's right to due process by depriving him of adequate notice of the manner in which he was alleged to have violated the law and a meaningful opportunity to prepare a defense. He argues that he should have been given sufficient notice of what theory the State planned to pursue. Second, Jeske argues that the late amendment prejudiced his state constitutional and statutory right to a preliminary hearing on those new facts and new theory of liability.

The State argues that the two theories charged in the Amended Criminal Information, the *per se* theory and the impairment theory, do not charge separate offenses. Rather, they are alternate ways to prove the same offense. Further, the State argues that Jeske was not prejudiced by the amendment because Jeske knew of the blood draw and was apprised of the results of the blood draw the same day the State received that information.

On appeal, the Court of Appeals, relying on a footnote in *State v. Kralovec*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017), held that Jeske failed to state any standard of review, and such failure was fatal to Jeske's claim regarding his objection to the amending of the Information. The Court of Appeals seems to indicate that there is a formalistic requirement that the standard of review be recited and the party claiming error attack a particular prong of that standard of review.

In *Kralovec*, this Court took issue with the fact that the appellant did not attempt to explain how the district court abused its discretion. *Id.* at 575, 388 P.3d at 589. This Court emphasized that when a party

> does not contend that the district court failed to perceive the issue as one of discretion, that the district court failed to act within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it or that the district court did not reach its decision by an exercise of reason," such a conclusory argument is "fatally deficient" to the party's case.

7

*Id.* at 575 n.2, 388 P.3d at 589 n.2 (quoting *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016)).

In *Cummings*, this Court held that the defendant did "not identify the applicable standard of review, much less attempt to apply it." *Cumming*, 160 Idaho at 853, 380 P.3d at 174. This Court further noted,

> Cummings *makes no attempt* to address the matters we consider when evaluating a claimed abuse of discretion. He does not contend that the district court failed to perceive the issue as one of discretion, that the district court failed to act within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it or that the district court did not reach its decision by an exercise of reason.

*Id.* (italics added) (citations omitted).

While one could glean from reading footnote 2 in *Kralovec* that we require a formalistic recitation of the abuse of discretion standard in order to review a claim of abuse of discretion, such a reading would be too technical. The real concern of this Court is whether an appellant's arguments are supported with relevant argument and authority. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("We will not consider an issue not 'supported by argument and authority in the opening brief.'" (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008))); *see also* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). Therefore, this Court's main concerns are the use of conclusory arguments, lack of authority to support those arguments, or failure to make any attempt to address the factors this Court considers. Consequently, *Kralovec* should not be read to require a formalistic recitation of the standard of review.

Although Jeske did not recite the standard of review in his opening brief, he clearly argued regarding "whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it." *Kralovec,* 161 Idaho at 574–75, 388 P.3d at 588–89. He identified the legal standard that was applicable to the choices before the district court by citing I.C.R. 7(e), Idaho Code section 19-1420, and relevant case law. Next, Jeske presented an analysis of how the above stated authority was not followed by the district court. Therefore, his was not merely a conclusory argument, as was this Court's concern in *Cummings* and *Kralovec*. Rather, Jeske argued that the district court failed to comply

with the second and third prongs of the abuse of discretion standard. Consequently, the amendment issue will be decided on its merits.

The decision to permit an amendment is a matter within the discretion of the trial court. *State v. Severson*, 147 Idaho 694, 708, 215 P.3d 414, 428 (2009). A court may allow an amendment of an information at any time before the prosecution rests, so long as doing so does not prejudice the defendant's substantial rights or charge the defendant with a different offense. I.C.R. 7(e); *see also* I.C. § 19-1420; *State v. O'Neill*, 118 Idaho 244, 249, 796 P.2d 121, 126 (1990). An amendment that merely alleges additional means by which the defendant committed the crime is permissible if it does not prejudice the defendant. *Severson*, 147 Idaho at 709, 215 P.3d at 429 (an amendment of an information to allege an alternative way to commit first-degree murder did not violate the standards of due process).

The trial court did not abuse its discretion in allowing the amendment of the Information. First, the amendment did not charge Jeske with a new offense. Idaho's DUI statute, as codified in Idaho Code section 18-8004(1), has been interpreted as creating one crime with two alternate ways of proving its violation. *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005) (citing *State v. Garrett*, 119 Idaho 878, 881–82, 811 P.2d 488, 491–92 (1991)). Generally, a statutory provision that lists alternative ways to prove commission of a crime does not create separate offenses for purposes of amendment. *State v. Palmer*, 138 Idaho 931, 937, 71 P.3d 1078, 1084 (Ct. App. 2003).

Both the original Information and the Amended Information charged Jeske with DUI. When the State added the *per se* theory, it did not charge Jeske with a new and separate offense. Rather, the amendment added an alternate method of proving the charge of DUI with which Jeske had already been charged. Therefore, the district court correctly concluded that the *per se* theory was not a separate offense.

Jeske argues that the Amended Information is only permissible if it alleges the same facts as the original. For this proposition, he relies on *State v. O'Neill*, 118 Idaho, 244, 249, 796 P.2d, 121, 126 (1990) ("[T]he facts alleged rather than the designation of the offense, control.") In *O'Neill*, the defendant was charged with violating Idaho Code section 18-1508, lewd conduct with a minor. *Id.* at 122, 796 P.2d at 245. Later, the State amended the Information, changing the violation to Idaho Code section 18-1506, sexual abuse of a minor, which is a lesser-included crime of Idaho Code section 18-1508. *Id.* This Court held that because he pleaded guilty to the

same facts that the Amended Information charged, the amendment did not violate his constitutional rights. *Id.* at 249, 796 P.2d at 126. Jeske's reliance on *O'Neill* is inapposite because that case dealt with an amendment that alleged a violation of a different statutory provision, rather than the same provision. *See Severson*, 147 Idaho at 709–10 n.17, 215 P.3d at 429–30 n.17. Here, both indictments charged Jeske with a DUI. Thus, *O'Neill* is not apposite precedent.

Second, the amendment did not prejudice any of Jeske's substantive rights. Factors relevant to determining whether the defendant was prejudiced include whether the amendment surprised the defendant, impaired the defendant's ability to adequately prepare his defense, necessitated extensive further preparation by the defendant, or subjected him to double jeopardy. *Severson*, 147 Idaho at 709, 215 P.3d at 429.

> A defendant . . . cannot legitimately claim that he was surprised to his substantial prejudice by the absence in the information of specific details relating to an offense where those details are already known to the defendant or provided to the defendant by a means other than through the language in the information.

*See State v. Dorsey*, 139 Idaho 149, 151, 75 P.3d 203, 205 (Ct. App. 2003) (citing *State v. Gumm*, 99 Idaho 549, 552, 585 P.2d 959, 962 (1978)).

For example, in *State v. LaMere*, 103 Idaho 839, 841, 655 P.2d 46, 48 (1982), the defendant was charged with rape under Idaho Code section 18-6101. The Information charged him with forcible rape, however, there was no allegation regarding the victim's age. *Id.* On the day before the trial, the State amended the Information to include facts regarding the victim's age to allege a violation of statutory rape. *Id.* On appeal, this Court held that even though the amendment was filed on the eve of trial, the defendant was not prejudiced because he was aware of the victim's age. *Id.* at 842, 655 P.2d at 49.

Jeske was obviously aware his blood had been drawn. The parties discussed the potential results of the blood draw on January 26, 2016, the date originally scheduled for his preliminary hearing. The defense received the results of the blood draw on February 24, 2016, three months prior to trial. The jury instructions requested by the State on May 26, 2016, included the *per se* theory instructions. Thus, as in *LaMere*, there was no prejudice to Jeske because he was aware of the facts underlying the Amended Information well in advance of trial.

Jeske also argues that by allowing the Amended Information, the district court violated his right to a preliminary hearing. In making this claim, Jeske relies on *State v. Palmer*, 138 Idaho 931, 936, 71 P.3d 1078, 1083 (Ct. App. 2003).

A defendant has a right to a preliminary hearing if he is charged with a felony. *State v. Stewart*, 149 Idaho 383, 387, 234 P.3d 707, 711 (2010); Idaho Const. art. I, § 8; I.C. § 19-804; I.C.R. 5.1.

> Where an information is . . . amended charging a defendant with a crime of a greater degree or of a different nature than that for which he or she was held by the committing magistrate, the defendant is denied his or her constitutional and statutory right to a preliminary hearing . . . .

*Palmer*, 138 Idaho at 936, 71 P.3d at 1083.

Jeske's reliance on *Palmer* is misplaced. The Court of Appeals held in *Palmer* that because the defendant was charged with the same offense, it was "unnecessary for a preliminary hearing to be conducted on the basis of the amendment." *Id.* at 937, 71 P.3d at 1084. As previously noted, the *per se* theory and the impairment theory are alternate ways to prove the crime of DUI. Consequently, the amendment did not charge Jeske with a different offense. After discussions with the State regarding a potential resolution, and the pending lab results, Jeske waived his preliminary hearing. Because he was not charged with a different offense, he was not entitled to a second opportunity to have a preliminary hearing.

## C. The district court did not err by refusing Jeske's requested jury instruction regarding impairment.

Prior to trial, Jeske requested that the district court instruct the jury: "To prove that someone was under the influence of alcohol . . . [t]he influence must be *noticeable or perceptible* and impair a physical or mental function that relates to one's ability to drive." Near the close of evidence, Jeske renewed his request and objected to the trial court's proposed instruction. The district court denied Jeske's request to add his proffered language to the approved Idaho Criminal Jury Instruction (ICJI). In overruling Jeske's objection, the district court gave the following ICJI instruction:

> To prove that someone was under the influence of alcohol, it is not necessary that any particular degree or state of intoxication be shown. Rather, the State must show that the defendant had consumed sufficient alcohol and/or intoxicating substances to influence or affect the defendant's ability to drive the motor vehicle.

ICJI 1006.

Jeske argues that his requested jury instruction more "adequately, accurately, or clearly state[s] the law." The State argues that the jury was properly instructed and that Jeske's requested language is covered by the language in the instruction.

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. *Severson*, 147 Idaho at 710, 215 P.3d at 430 (citing I.C. § 19-2132). Either party may present any written instruction and request it be given. I.C. § 19-2132(a). If the instruction is "correct and pertinent[,]" it must be given. *Id.* An instruction is not "correct and pertinent" if it is (1) an erroneous statement of the law; (2) adequately covered by other instructions; or (3) "not supported by the facts of the case." *Severson*, 147 Idaho at 710–11, 215 P.3d at 430–31 (quoting *State v. Olsen*, 103 Idaho 278, 285, 647 P.2d 734, 741 (1982)).

The State, in its opposition, relies on the Court of Appeals' decision in *State v. Lewis*, 126 Idaho 282, 284–85, 882 P.2d 449, 451–52 (Ct. App. 1994), which rejected the noticeable and perceptible language as mandatory for a DUI jury instruction. Instead, *Lewis* held that the proper instruction for DUI was stated in *State v. Glanzman*, 69 Idaho 46, 49, 202 P.2d 407, 408 (1949).[6] The State contends that under *Lewis*, Jeske's requested instruction would be an erroneous statement of law and would fail the first prong of the "correct and pertinent" test.

However, *Lewis* is distinguishable from this case. First, there was no objection to the jury instruction in *Lewis*. *Id.* at 284, 882 P.2d at 451. The test for a requested instruction is different from an unobjected to instruction. *Compare Severson*, 147 Idaho at 710–11, 215 P.3d at 430–31 (three-prong test for requested jury instruction), *with Perry*, 150 Idaho at 221, 245 P.3d at 973 (fundamental error test for unobjected-to jury instruction).

Also, the Court of Appeals recognized that the noticeable and perceptible language was not mandatory, but did not hold that noticeable and perceptible was an erroneous statement of law in all cases. *Lewis*, 126 Idaho at 285, 882 P.2d at 452. This is further demonstrated by that court's later decision in *State v. Schmoll*, 144 Idaho 800, 804, 172 P.3d 555, 559 (Ct. App. 2007), defining "under the influence" to "include[ ] impairment of driving ability to the slightest degree; the impairment must be *noticeable or perceptible*, but does not need to rise to a level where the defendant is incapable of driving safely or prudently." *Id.* (citing *State v. Andrus*, 118 Idaho 711,

---

[6] The instruction in *Glanzman* stated, "To constitute [a DUI], it is not necessary that the driver of the motor vehicle be shown to have been in any particular degree or state of intoxication, but only that such driver at the time charged had consumed intoxicating liquor to such an extent as to influence or affect his driving of the motor vehicle."

714–15, 800 P.2d 107, 110–11 (Ct. App. 1990)). The fact that a particular instruction is not required in every case does not mean that it is an erroneous statement of law in all cases. *See* Stephen M. Rice, *Conspicuous Logic: Using the Logical Fallacy of Affirming the Consequent as a Litigation Tool*, 14 BARRY L. REV. 1, 10–12 (2010). Therefore, the noticeable and perceptible language satisfies the first prong, as it is not an "erroneous statement of the law."

However, Jeske likely does not satisfy the second prong, because the given instruction adequately covers the requested instruction. The impairment instruction given by the district court instructed that "the State must show that the defendant had consumed sufficient alcohol and/or intoxicating substances to influence or affect the defendant's ability to drive the motor vehicle." Thus, the State had to present evidence that alcohol was influencing or affecting Jeske's ability to drive. This would include the officer's testimony about his observations and the video showing Jeske's behavior. Any observations or video evidence would have been "noticeable or perceptible." Consequently, the proposed instruction is redundant and adequately covered by the instructions given. Therefore, there was no error in the district court's refusal to give Jeske's requested jury instruction.

## D.  The district court erred in admitting evidence of Jeske's lack of a driver's license, but the error was harmless.

During trial, Jeske moved to have a portion of the video regarding his lack of a driver's license redacted, arguing it was uncharged misconduct and would be prejudicial to him. (While Jeske's counsel did not specifically refer to Rule 404(b) of the Idaho Rules of Evidence, referring to uncharged misconduct and prejudice to the defendant necessarily implicates Rule 404(b), I.R.E.). When asked about his lack of a driver's license, Jeske made the motion of rubbing his fingers and thumb together, suggesting he did not have a license because he could not afford one. The State argued that identification of the defendant was an issue in the case, that the assertion was not prejudicial, and that it was "intertwined" with other conversations, making it difficult to redact. The district court denied Jeske's motion. The district court stated,

> It appears that the other issues with respect to the question about the driver's license, the response is not prejudicial. Mr. Jeske did not give a reason, such as he had a suspended driver's license, you know, for other reasons, and I do find that it is sufficiently *intertwined with other issues* that it would be—that it also goes to reasonable suspicion and probable cause.

On appeal, Jeske argues the district court erred in admitting the evidence under the doctrine of *res gestae* and that the challenged portion should have instead been analyzed under

13

I.R.E. 404(b). The State argues that the officer's conversation with Jeske regarding the driver's license is relevant to Jeske's behavior during the stop and whether he was impaired.

This Court recently rejected *res gestae* as a standard for admitting evidence and concluded that evidence is only admissible if it meets the criteria established by the Idaho Rules of Evidence. *See Kralovec*, 161 Idaho at 574, 388 P.3d at 588. *Res gestae*

> has been an exception to the general prohibition against use of other misconduct evidence. In this context, *res gestae* refers to other acts that occur during the commission of or in close temporal proximity to the charged offense which must be described to "complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings."

*State v. Blackstead,* 126 Idaho 14, 17–18, 878 P.2d 188, 191–92 (Ct. App. 1994) (citations omitted).

It is not clear what test the district court used to determine the admissibility of the lack of a driver's license. However, the court's use of the phrase "intertwined with other issues" suggests that the district court used an improper *res gestae* analysis.

It is of note that the district court did not have the benefit of this Court's decision in *Kralovec* when it made its ruling, as *Kralovec* was released nearly seven months after the district court's decision. This Court has held that "appellate courts should decide and dispose of the case in accordance with the law existing at the time of its own decision." *Davis v. Prof'l Bus. Servs., Inc.,* 109 Idaho 810, 818, 712 P.2d 511, 519 (1985); *see also Shabinaw v. Brown*, 125 Idaho 705, 708, 874 P.2d 516, 519 (1994). Generally, this would require reversal for the district court to reconsider its decision in light of the new law. *Davis*, 109 Idaho at 818, 712 P.2d at 519. However, in this case, any potential error under *res gestae* was harmless.

Under current case law, the district court would have committed error in admitting the evidence under a theory of *res gestae.* As evidence can no longer be admitted under *res gestae*, any admission of the evidence as *res gestae* would be improper.
However, as noted previously, there was overwhelming, uncontradicted scientific evidence demonstrating that Jeske's blood alcohol content was 0.182, more than twice the *per se* legal limit of 0.08. Thus, any inclusion of Jeske's lack of a driver's license was harmless.[7]

---

[7] It should also be noted that if the State had charged Jeske with driving without privileges, which was clearly an option, and the misdemeanor had been joined for trial with the DUI charge, the evidence would have been

14

**E. The cumulative error doctrine does not require reversal in Jeske's case.**

Jeske next argues that even if this Court determines that each of the errors discussed was harmless by itself, this Court should still vacate Jeske's conviction under the cumulative error doctrine. The State argues that Jeske showed no error, and thus, cannot claim cumulative error.

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial." *Perry*, 150 Idaho at 230, 245 P.3d at 982 (citations omitted). "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998) (citing *Bruton v. United States*, 391 U.S. 123, 135 (1968)).

Here, the district court erred in allowing comments on Jeske's refusal to allow a warrantless blood draw and by allowing evidence of uncharged misconduct in relation to his lack of a driver's license. However, the aggregate effect of these errors, in the light of the evidence properly presented at trial, is not of such magnitude that Jeske was denied a fair trial. See *State v. Johnson*, 163 Idaho 412, 428, 414 P.3d 234, 250 (2018). Therefore, the cumulative error doctrine does not require reversal of Jeske's conviction.

## V. CONCLUSION

For the reasons articulated in this opinion, the judgment of conviction is affirmed.

Chief Justice BURDICK, Justices HORTON, BRODY and BEVAN, CONCUR.

---

admissible. While this scenario did not play out in this case, it supports the conclusion that the admission of the evidence was harmless.