**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47768**

| | | |
|---|---|---|
| In the Interest of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | **Filed: May 12, 2020** |
| Petitioner-Respondent, | ) ) ) | **Karel A. Lehrman, Clerk** |
| v. | ) ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| JOHN DOE (2020-07), | ) ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. David H. Judd, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

William J. Fitzgerald, Public Defender; Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Floyd L.E. Swanton, Deputy Attorney General, Lewiston, for respondent.

_____

GRATTON, Judge

John Doe appeals from the judgment terminating his parental rights to his minor child. Doe argues that the magistrate court erred in ruling that: (1) Doe will be incarcerated for a substantial period of time during the child's minority; (2) Doe neglected his child; and (3) it is in the best interests of the child for Doe's rights to be terminated. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arose in February 2018, when John Doe's (Doe) minor child, B.S.,[1] and her half-sibling, P.S., were placed in the care of the Idaho Department of Health and Welfare (Department). Doe and C.S. (Mother) are the parents of B.S. Because Doe was virtually nonexistent in B.S.'s life, other than a visit with B.S. when she was three to four months old, B.S. lived with Mother.

In 2018, it was reported that P.S. was not receiving appropriate medical care. Based upon this report, the Department created safety plans for Mother to ensure that P.S.'s medical needs were met. Ultimately, the children were taken into the care of the Department after Mother failed to follow the safety plans and the Department discovered that the children were not receiving basic needs. During this time, and throughout the pendency of the Child Protection Act (CPA) case, Doe was incarcerated in the State of Washington based on a guilty plea to felony first degree assault with a weapon enhancement.[2]

After the children were taken into the care of the Department, case plans for Doe and Mother were ordered by the court. Based on multiple failures on the part of both parents, the Department filed for termination of parental rights. Mother consented to voluntary termination of her parental rights to both P.S. and B.S. However, Doe's case proceeded to trial. After a one-day trial in 2019, the magistrate court terminated Doe's parental rights. Doe's termination was based on a finding of incarceration for a substantial period of B.S.'s minority, neglect, and the best interests of the child. Doe timely appeals.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho

---

[1]     B.S. was born March 4, 2015.

[2]     In relation to that offense, Doe was sentenced to a term of 135 months and he testified that he is set to be released October 2025.

383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the Department sought termination of Doe's parental rights for three reasons: (1) incarcerated for a substantial period of time during the child's minority pursuant to I.C. § 16-2005(e); (2) neglect for failing to comply with the requirements of the case plan pursuant to I.C.

3

§ 16-2002(3)(b); and (3) neglect for failing to provide proper parental care pursuant to I.C. § 16-2002(3)(a). Ultimately, the magistrate court terminated Doe's parental rights based upon its conclusion that Doe would remain incarcerated for a substantial period of B.S.'s minority and Doe neglected B.S. under I.C. § 16-2002(3)(a) by failing to provide proper parental care. However, the magistrate court found that Doe's incarceration made "full compliance [with the case plan] impossible." Thus, the court concluded that the Department failed to show that Doe neglected B.S. under I.C. § 16-2002(3)(b) because it failed to present clear and convincing evidence that Doe was responsible for non-compliance with his case plan.

## A. Statutory Grounds

On appeal, Doe argues that the magistrate court erred in concluding that he would be incarcerated for a substantial period of time during B.S.'s minority. In addition, Doe argues that the magistrate court erred in finding that he neglected B.S. pursuant to I.C. § 16-2002(3)(a) because impossibility is a defense to both forms of neglect and it was impossible for him to discharge his parental responsibilities due to his incarceration and inability to access his daughter. Because we affirm the magistrate court's termination on the basis of Doe's incarceration, we need not address Doe's neglect arguments. *See Doe*, 144 Idaho at 842, 172 P.3d at 1117 (holding that each statutory ground is an independent basis for termination).

Under Idaho Code § 16-2005(1)(e), termination of parental rights is justified where "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." This requires two findings: (1) that the parent is incarcerated; and (2) that the incarceration will likely last "for a substantial period of time during the child's minority." I.C. § 16-2005(1)(e); *In Matter of Doe (2016-14)*, 161 Idaho 596, 602, 389 P.3d 141, 147 (2016). In determining whether the parent is "likely to remain incarcerated for a substantial period of time during the child's minority," the trial court "may consider factors including, but not limited to: the age of the child; the relationship, if any, that has developed between the parent and the child; and the likely period of time the parent will remain incarcerated." *In re Doe (2014-26)*, 158 Idaho 548, 552, 348 P.3d 163, 167 (2015). In determining the likely period of time the parent will remain incarcerated, the court must consider the expected duration of future incarceration rather than the duration of past incarceration. *In Matter of Doe (2016-14)*, 161 Idaho at 602, 389 P.3d at 147.

Doe contends that the magistrate court erred in concluding that the remaining months of his incarceration amount to a substantial period of B.S.'s minority. To support his argument,

4

Doe contends that B.S. will only be eleven years old when Doe is released and the prison system can provide opportunities for parent-child bonding during his incarceration. We are not persuaded by Doe's argument.

We conclude that the magistrate court's finding that Doe will be incarcerated for a substantial period of time during B.S.'s minority is supported by substantial and competent evidence. The magistrate court found that Doe is presently incarcerated and is serving a 135-month sentence for felony assault in the first degree with a weapon enhancement. Doe will remain incarcerated until October 30, 2025. At the time of trial, B.S. was four years old. She will be almost eleven years old upon Doe's release from prison. In addition to the lengthy incarceration period, the magistrate court appropriately considered the relationship, or lack thereof, between Doe and B.S. when determining if the time period is substantial. *In re Doe (2014-26)*, 158 Idaho at 552, 348 P.3d at 167. The undisputed evidence shows that Doe met B.S. on only one occasion when B.S. was three to four months old. Doe was not at the hospital when B.S. was born and has not spent a single night under the same roof as B.S. Other than two letters that Doe sent to B.S. after the initiation of the CPA case, Doe has never communicated with B.S. Not once has Doe spoken with B.S. on the phone, in person, or by video chat. According to the magistrate court's findings, "[Doe] provided testimony indicating he knows almost nothing about B.S." In addition, B.S.'s foster placement testified that B.S. does not know or even mention Doe. Finally, Doe has never provided financial support for B.S. As the magistrate court concluded, "[B.S.] does not remotely have a bond with [Doe] that could mitigate the void that will continue to exist between them for the next six years of [B.S.'s] young life." Accordingly, the magistrate court did not err in finding that Doe will be incarcerated for a substantial period of B.S.'s minority.

## B. Best Interests of Child

Doe argues that it is not in B.S.'s best interests to terminate his parental rights. The Department argues that substantial and competent evidence supports the magistrate court's finding that termination of Doe's parental rights is in the best interests of B.S.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with

substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

B.S. has not received the stability at home that she deserves, but is making improvements while in the Department's care. B.S. and P.S. reside in foster placement together. Their foster care provider is P.S.'s paternal grandmother (Grandmother) and is a current permanent placement option. Grandmother testified that B.S. is doing well while in her care but fears being removed from Grandmother's home because of the instability that she has experienced throughout her life. The Department case worker testified that it is in B.S.'s best interests for Doe's parental rights to be terminated and for her to be permanently placed with Grandmother. She testified that B.S. loves Grandmother and "[w]hile awaiting [Doe]'s release for over the next six years, [B.S.] would be exposed to the threat of separation from her home, her [Grandmother] and her older sister [P.S]." The case worker also explained that "initiating telephonic or in-person communication between [Doe] and [B.S.] during that timeframe, in an attempt to create and maintain a relationship, would cause confusion, turmoil, and trauma in [B.S.'s] life." The magistrate court found that Doe will be incarcerated for a majority of B.S.'s life and his current incarceration prevents him from providing a safe stable home for B.S. Upon release, Doe would need to be able to obtain housing for himself, gain employment, and abide by the terms of his three-year community supervision before he could attempt to provide for B.S. B.S. deserves to have permanency and stability, neither of which Doe has been able to provide for her. For these reasons and the reasons set forth above, substantial and competent evidence supports the magistrate court's conclusion that termination of Doe's parental rights is in B.S.'s best interests.

### III.

### CONCLUSION

There is substantial and competent evidence to support the magistrate court's findings that Doe will remain incarcerated for a substantial period of time during the child's minority. Additionally, it is in the best interests of the child to terminate Doe's parental rights. Therefore, the judgment terminating Doe's parental rights is affirmed.

6

Judge LORELLO and Judge BRAILSFORD **CONCUR**.