# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49873

| | |
|---|---|
| In the Matter of John Doe I and John Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) ) | Filed: November 9, 2022 |
| | | Melanie Gagnepain, Clerk |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) | |
| Petitioner-Respondent, | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| v. | ) ) | |
| JOHN DOE (2022-28), | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Shane Darrington, Magistrate.

Judgment terminating parental rights, vacated and case remanded.

Aaron J. Bazzolli, Canyon County Public Defender; Alex W. Brockman, Deputy Public Defender, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John T. Spalding, Deputy Attorney General, Caldwell, for respondent.

_____

LORELLO, Chief Judge

John Doe (2022-28) appeals from the judgment terminating his parental rights. For the reasons set forth below, we vacate the judgment terminating Doe's parental rights and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the father of the two minor children in this action. The children were born in 2014 and 2016. The children were placed into foster care in October 2020 following their mother's

arrest on an outstanding warrant. Temporary custody of the children was awarded to the Idaho Department of Health and Welfare. Ultimately, the Department filed a petition to terminate Doe's parental rights. Doe was incarcerated at the time of the evidentiary hearing and had been since November 2019. Doe is eligible for parole in October 2022 but, if not paroled, he could remain incarcerated until November 2026.

In March 2022, the magistrate court held an evidentiary hearing on the petition to terminate. The magistrate court concluded that clear and convincing evidence showed that Doe "has been incarcerated and is likely to remain incarcerated for a substantial period of time during" the children's minorities. In arriving at this conclusion, the magistrate court considered Doe's prior period of incarceration as well as the likely period of incarceration remaining. The magistrate court also concluded that clear and convincing evidence showed that termination is in the best interests of the children and terminated Doe's parental rights.[1] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

---

[1] The mother's parental rights were also terminated but are not at issue in this appeal.

## III.

## ANALYSIS

Doe asserts the magistrate court erred in concluding that he had been incarcerated and is likely to remain incarcerated for a substantial period of time during the children's minorities and that termination is in the best interests of the children. The Department concedes that, in concluding there was a statutory basis for termination, the magistrate court "cited" to case law that has been "overruled." Nonetheless, the Department responds that Doe invited the error and forfeited appellate review of the error by failing to provide cogent argument and by not arguing the correct standard of review. The Department further responds that substantial and competent evidence supports the magistrate court's finding that termination is in the best interests of the children. Because the magistrate court erred by aggregating Doe's past period of incarceration with his likely future period of incarceration, we vacate the judgment terminating Doe's parental rights and remand for further proceedings. As such, we do not address whether the magistrate court erred in concluding that termination is in the best interests of the children.

Idaho Code Section 16-2005(1) authorizes a trial court to terminate parental rights if termination is in the best interests of the child and one or more of the listed conditions exist. One such condition is when a "parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority." I.C. § 16-2005(1)(e). This requires a trial court to make two factual findings: "(1) the parent has been incarcerated; and (2) the parent is likely to remain incarcerated for a substantial period of time during the child's minority." *Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 602, 389 P.3d 141, 147 (2016) (internal quotations and brackets removed). The likely period of incarceration remaining is measured from the date of the evidentiary hearing regarding termination to the time when the parent is likely to be released. *See id.* at 603, 389 P.3d at 148. There is no bright-line rule to determine what constitutes a substantial period during a child's minority. *Idaho Dep't of Health & Welfare v. Doe (2010-28)*, 151 Idaho 605, 610, 261 P.3d 882, 887 (Ct. App. 2011). Rather, whether a likely period of future incarceration is for a substantial period during the child's minority is determined on a case-by-case basis, applying a definition of "substantial" meaning important, essential, or considerable in quantity. *Id.* In this analysis, a trial court may consider numerous factors including, but not limited to: "the age of the child; the relationship, if any, that has

3

developed between the parent and the child; and the likely period of time that the parent will remain incarcerated." *In re Doe (2014-26)*, 158 Idaho 548, 552, 348 P.3d 163, 167 (2015). On appeal, there is no dispute that the magistrate court found that Doe had been incarcerated prior to the evidentiary hearing on the petition to terminate his parental rights, satisfying the first required finding. Doe's argument on appeal centers on the second required finding, which is that a parent is likely to *remain* incarcerated for a substantial period of time during the child's minority.

Doe asserts the magistrate court erred by aggregating his past period of incarceration with his likely future period of incarceration and then concluding that the aggregate period of incarceration was a substantial period during the children's minorities. A trial court errs by considering the "aggregate duration of [a parent's] incarceration, rather than the time [the parent] may be required to serve subsequent to the date of the evidentiary hearing," when determining the second required finding under I.C. § 16-2005(1)(e). *Doe (2016-14)*, 161 Idaho at 603, 389 P.3d at 148. As the Department concedes on appeal, *Doe (2016-14)* overruled the portion of *Doe (2010-28)* that interpreted I.C. § 16-2005(1)(e) as requiring consideration of both the prior period of incarceration and the likely time remaining. *See Doe (2016-14)*, 161 Idaho at 602, 389 P.3d at 147.

In arriving at its decision, the magistrate court found that Doe had been incarcerated since the children were three and four years old, meaning the children would be six and seven when Doe would be eligible for parole but would be ten and eleven if he served his entire sentence. The magistrate court found that "those age ranges encompass a great portion of the children's formative years." Notably, these "age ranges" include the time Doe was incarcerated prior to the evidentiary hearing. As for the possibility of parole, the magistrate court did not find credible Doe's testimony that he would be granted parole in October 2022. Instead, the magistrate court found that Doe's "history tends to show he will not ultimately have the strength of will necessary to secure parole." The magistrate court further observed that Doe's "period of incarceration both prior to trial and prior to any release makes up a large majority of the percentage of the children's lives to date" and that this "percentage will only increase if [Doe] fails to parole as hoped." These findings show that the magistrate court aggregated Doe's past period of incarceration with the likely period of incarceration remaining after the evidentiary hearing.

4

The magistrate court also considered other factors. Specifically, the magistrate court found that it would take at least a year after Doe's release from incarceration for him to be ready for the children to return to his custody, that the children were not in his custody for sixteen months during a prior child protection case, and that "the ages in question are perhaps the most formative in a person's life." After reviewing all these factors, the magistrate court concluded that "the likely period of incarceration [is] a *substantial* period of the children's minorit[ies]." Notably, this conclusion does not qualify the word "incarceration" with the word "remaining," again indicating that the magistrate court considered Doe's aggregate period of incarceration, not the likely period of incarceration remaining. By aggregating Doe's past period of incarceration with the likely period of incarceration remaining and considering this aggregate period in determining whether it was a substantial period during the children's minorities, the magistrate court erred.

The Department advances several reasons why we should disregard this error. First, the Department contends that Doe invited the error. The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). One may not complain of errors one has consented to or acquiesced in. *Id.* In short, invited errors are not reversible. *Id.* The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting the court to take action from later challenging that decision on appeal. *State, Dep't of Health & Welfare v. Doe (2020-33)*, 168 Idaho 105, 109, 480 P.3d 143, 147 (Ct. App. 2020). The Department notes that Doe cited to *Doe (2010-28)* in his written closing argument to the magistrate court. Doe, however, did not cite *Doe (2010-28)* for the proposition that a parent's prior period of incarceration should be a factor in determining the second finding required by I.C. § 16-2005(1)(e). Instead, Doe cited the opinion to show that I.C. § 16-2005(1)(e) is a statutory basis for termination, that the statute "does not provide a bright line-rule for a percentage of a child's minority that a parent be incarcerated," and that the opinion factored in the time it would take the parent after release from incarceration to be "able to provide a safe and stable home environment." Thus, the citation to *Doe (2010-28)* did not invite the error.

The Department also asserts Doe invited the error because he argued to the magistrate court that the period of incarceration (including both the prior period and the future likely remaining period) was "far less than a substantial period of the children's minorit[ies]." Arguing an incorrect

5

legal standard, by itself, does not preclude review of a trial court's adoption of that incorrect legal standard. *See Doe (2016-14)*, 161 Idaho at 602, 389 P.3d at 147 (noting that, on appeal, "the parties' arguments are predicated upon the same erroneous legal standard as the magistrate applied"). Although Doe's argument relied on an incorrect legal standard, he did not invite the magistrate court to conclude that termination was warranted under I.C. § 16-2005(1)(e)--instead, Doe argued for the opposite result. Because Doe did not invite the magistrate court's action, he did not invite the error. *Cf. Doe (2020-33)*, 168 Idaho at 109, 480 P.3d at 147 (holding that a parent invited an error by stipulating to the magistrate court allowing the parent to testify by video and to be otherwise present by telephone).

Second, the Department asserts Doe forfeited consideration of the error by failing to present cogent supporting argument. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). According to the Department, "the issue in [*Doe (2016-14)*]" was where the magistrate was 'focusing,'" but Doe fails to "argue the issue of focus at all." The Department also asserts that, in this case, "it is not clear that the magistrate court impermissibly focused on prior incarceration" but, instead, "most of the findings were forward-facing." The Department's argument, however, relies on an incorrect interpretation of *Doe (2016-14)*. Although the Idaho Supreme Court used the word "focusing," *Doe (2016-14)*, 161 Idaho at 602-03, 389 P.3d at 147-48, it was that trial court's consideration of the entire period of incarceration--the prior period of incarceration combined with the likely period of incarceration remaining--that was error, *see id*. Notably, the Court in *Doe (2016-14)* did not engage in the analysis that the Department asserts is required. There is no discussion in *Doe (2016-14)* of whether the trial court gave too much weight to one period over the other. *See id.* As discussed above, the magistrate court erred by aggregating Doe's past period of incarceration with the likely period of incarceration remaining and then considering whether this aggregate period constituted a substantial period during the children's minorities.

Third, the Department argues that Doe forfeited consideration of the error by failing "to cite a standard of review other than arguing that questions of law are reviewed de novo." The Department attempts to fault Doe by asserting that he "took no steps to explain how any error in

this case warrants reversal or fails to warrant reversal under the applicable standard of review." The Department then cites to authority holding that an appellate court will not consider issues raised for the first time on appeal, *Doe (2016-1) v. Doe*, 160 Idaho 854, 860, 380 P.3d 175, 181 (2016), and that an appellant forfeits an issue by failing to provide argument or authority, *Idaho Dep't of Health & Welfare v. Doe (2011-16)*, 152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012). Doe, however, cannot be expected to argue to the magistrate court that its ruling warrants reversal under a standard of review applicable only on appeal. Consequently, the authority cited by the Department prohibiting issues from being raised for the first time on appeal is inapposite. Regarding argument and authority, we disagree that Doe failed to present adequate argument or authority that the magistrate court's error warrants reversal under the applicable standard of review. As is evident from our analysis above, Doe cited authority and argued that the magistrate court erred by applying an incorrect legal standard. Because Doe's argument and authority was adequate for our review, any omission of a relevant standard of review in his appellate briefing does not result in a forfeiture of the issue. *See State v. Jeske*, 164 Idaho 862, 870, 436 P.3d 683, 691 (2019) (disavowing an interpretation of Idaho case law that would require "a formalistic recitation of the standard of review" and observing that the "real concern of this Court is whether an appellant's arguments are supported with relevant argument and authority").

We now turn to several of Doe's other assertions of error. Doe asserts the magistrate court erred because, according to Doe, a trial court must consider whether the likely period of future incarceration would be "a large percentage of the children's *remaining* minority." (Emphasis added.) In support of his position, Doe cites to an opinion in which the Idaho Supreme Court disagreed with the Court of Appeals' holding that "I.C. § 16-2005(1)(e) does not require an analysis of whether the prospective period of the parent's incarceration constitutes a substantial percentage of the time remaining in the child's minority." *Doe (2016-14)*, 161 Idaho at 602, 389 P.3d at 147 (quoting *Doe (2010-28)*, 151 Idaho at 610, 261 P.3d at 887). However, the Idaho Supreme Court did not address whether the period of incarceration must be a certain "percentage of the time remaining in the child's minority." Instead, the Idaho Supreme Court held that, contrary to the Court of Appeals' holding, the second finding mandated by I.C. § 16-2005(1)(e) requires consideration of only the incarceration that a parent "may be required to serve subsequent to the date of the evidentiary hearing." *Doe (2016-14)*, 161 Idaho at 603, 389 P.3d at 148. Thus,

7

the Idaho Supreme Court did not require trial courts to consider whether the likely period of incarceration remaining would be a "substantial percentage of the time remaining in the child's minority." Other than *Doe (2016-14)*, Doe offers no authority in support of his argument that a substantial likely period of incarceration remaining is determined as a ratio of the amount of time the child has left as a minor, as opposed to the child's entire minority. Because the parties have not provided adequate argument and authority on this issue, and the resolution of this issue is not necessary on appeal, we decline to address it further. *See Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247.

Doe asserts in a footnote that the magistrate court "likely" erred by failing to apply the criteria for granting parole listed in Idaho Administrative Procedures Act Rule 50.01.01.250. In support of his argument, Doe cites to *Brauner v. AHC of Boise, LLC*, 166 Idaho 398, 459 P.3d 1246 (2020), an opinion concerning a civil action for medical malpractice. *Brauner*, however, does not address termination of parental rights or parole eligibility. Because Doe failed to support his argument with relevant authority, we do not consider this argument further. *See Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247.

Finally, we address what remedy is appropriate. Doe asserts that the magistrate court's "error cannot be merely remedied by a remand" to apply the correct legal standard. Instead, Doe requests that this case be remanded "to proceed under the child-protection-action [sic]." According to Doe, this remedy is appropriate because there is not substantial and competent evidence to "support a finding" that Doe was likely to remain incarcerated for a substantial period during the children's minorities. We cannot resolve this factual issue on appeal. It is for the magistrate court to determine, in the first instance, whether Doe's likely period of incarceration remaining is a substantial period of time during the children's minorities. *See Doe (2016-14)*, 161 Idaho at 602-03, 389 P.3d 147-48. Consequently, we vacate the judgment terminating Doe's parental rights and remand for further proceedings consistent with this opinion.

## IV.

### CONCLUSION

The magistrate court erred by aggregating Doe's previous period of incarceration with his likely period of incarceration remaining and considering whether the aggregate period constituted a substantial period during the children's minorities. Accordingly, the judgment terminating Doe's

8

parental rights is vacated and the case is remanded to the magistrate court for further proceedings consistent with this opinion.

Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.